UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL HUPP, | Case No. 5:21-cv-01670-RSWL (MAR) |
| Petitioner, | |
| v. | REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| WARDEN, | |
| Respondent. | |

This Report and Recommendation is submitted to the Honorable Ronald S.W. Lew, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

**I.**

**SUMMARY OF RECOMMENDATION**

Petitioner Paul Hupp ("Petitioner"), proceeding pro se, has filed a First Amended Petition for Writ of Habeas Corpus ("Petition") pursuant to 28 U.S.C. § 2254 challenging his January 29, 2019 conviction and probation violation. ECF Docket No. ("Dkt.") 6 at 2.[1] Respondent filed an Answer to the Petition ("Answer"), and Petitioner filed a Reply. Dkts. 22; 29. For the reasons that follow, the Court

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

1  recommends:  (1) accepting this Report and Recommendation; (2) **DENYING** the

2  Petition; (3) **DISMISSING** this action with prejudice; and (4) **DENYING** a

3  Certificate of Appealability.

## II.

## PROCEDURAL HISTORY

6        In May 2013, in Case No. RIF1311088, the Superior Court of Riverside placed

7  Petitioner on felony probation for five (5) years after a jury found him guilty of

8  stalking (Cal. Penal Code § 646.9(a)), stalking with a court order in effect (Cal. Penal

9  Code § 646.9(b)), making a criminal threat (Cal. Penal Code § 422), and disobeying a

10  court order (Cal. Penal Code § 166(a)).  Lodgs.[2] 1, Vol. 1 at 10–11; 6 at 2.  On January

11  29, 2019, in Case No. BAM1702375, Petitioner was convicted by a jury of

12  misdemeanor assault with a deadly weapon  (Cal. Penal Code § 245(a)(1))) and

13  misdemeanor violating a court order (Cal. Penal Code § 166(a)(4)).  Dkt. 6 at 2; Lodgs.

14  1 at 45–46; 6 at 2–5.  Concurrent with the jury trial, the trial court independently tried

15  Petitioner for a probation violation in Case No. RIF1311088 and found that he had

---

[2] The Court's citations to Lodged Documents refer to documents lodged in support of Respondent's Answer.  See Dkt. 22.  Respondent identifies the documents in Dkt. 24, as follows:

    1.    Clerk's Transcript: two volumes ("Lodg. 1, Vols. I & II");

    2.    Reporter's Transcript: four volumes ("Lodg. 2, Vols. I–IV");

    3.    Appellant's Opening Brief filed in California Court of Appeal case number E072466 ("Lodg. 3");

    4.    Respondent's Brief filed in California Court of Appeal case number E072466 ("Lodg. 4");

    5.    Reply Brief filed in California Court of Appeal case number E072466 ("Lodg. 5");

    6.    Opinion filed in California Court of Appeal case number E072466 ("Lodg. 6");

    7.    Petition for Writ of Habeas Corpus in California Supreme Court case number S272745 ("Lodg. 7");

    8.    Docket reflecting denial of Petition for Writ of Habeas Corpus in California Supreme Court case number S272745 ("Lodg. 8");

    9.    Minute Order reflecting dismissal of Riverside Superior Court case number RIF1301131 ("Lodg. 9").

Dkt. 24.

violated his probation.  Lodgs. 1 at 46; 6 at 5.  On March 26, 2019, Petitioner was sentenced to three (3) years' probation with 90 days in jail for the misdemeanor convictions, to run concurrently with a new five-year probation term, 90 days in jail, and anger management for the probation violation.  Lodgs. 1 at 48–50; 6 at 6.

Petitioner appealed the revocation of probation in Case No. RIF1311088, and on September 15, 2020, the California Court of Appeal affirmed the trial court's ruling in a reasoned decision.  Lodgs. 3–6.

On September 28, 2021, Petitioner, proceeding pro se, commenced the instant action.  Dkt. 1.  Petitioner's initial filing was unclear, and therefore, at the Court's request, Petitioner filed an Amended Petition on October 27, 2021.  Dkts. 3; 6.

On January 19, 2022, while the instant Petition was still pending, Petitioner filed a habeas petition in the California Supreme Court challenging his misdemeanor convictions in Case No. BAM170237, which the court denied on procedural grounds on March 9, 2022.  Lodgs. 7–8.

On March 25, 2022, Respondent filed an Answer to the Petition.  Dkt. 22. Petitioner filed a Reply on May 20, 2022.  Dkt. 29.

### III.

### SUMMARY OF FACTS

The California Court of Appeal summarized the relevant facts as follows:[3]

> In May 2013, the trial court placed Hupp on felony probation for a term of five years after a jury found him guilty of four offenses—stalking, stalking with a court order in effect, making a criminal threat, and disobeying a court order. One of the probation terms was that he "obey all laws."
>
> After the driving incident at issue here, which happened in July 2017, the Riverside County District Attorney charged Hupp with one count of misdemeanor assault with a deadly weapon (an automobile) (Pen.

---

[3] Petitioner does not appear to argue that the California Court of Appeal opinion was based on an unreasonable determination of the facts.  Furthermore, the Court has independently reviewed the trial record and finds this portion of the Court of Appeal's summary accurate.

3

Code, § 245, subd. (a)(l), unlabeled statutory citations refer to this code), one count of misdemeanor violating a court order (§ 166, subd. (a)(4)), and alleged he had violated his felony probation by failing to obey the law.

At trial, both Hupp and the neighbor acknowledged they did not have a good relationship. The neighbor said they had been living next door to each other since 2004, but their relationship didn't really sour until 2012, when Hupp began walking his dogs across his yard. According to the neighbor, who is in his late 70s, Hupp was hostile towards him on several occasions in the years that followed. For example, in the fall of 2012, after he told Hupp to leash one of his dogs, Hupp called him an asshole and said he would bust his jaw and knock his teeth down his throat. In 2014, he was working in his front yard when Hupp drove by, flipped him off, said "Fuck you, asshole," and threatened again to knock his teeth down his throat.

Perhaps unsurprisingly, the two men disagreed about where the dividing line between their properties stood. The dispute culminated in June 2017, when the neighbor placed marker flags in their shared lawn to delineate the disputed property boundary. Someone took the flags down and left them in the neighbor's yard and then took them down again when he repositioned them. When he confronted Hupp about the flags, Hupp made a crying motion with his hands and said, "Come over here, you know what I'll do to you." The neighbor checked the recordings from his security cameras and, sure enough, they contained footage of Hupp crumpling the flags and throwing them on his driveway.

After the incident with the flags, the neighbor obtained a temporary restraining order against Hupp, and served him with the order on July 7, 2017. Among other things, the restraining order prohibited Hupp from harassing, assaulting, intimidating, or disturbing the peace of, the neighbor and his wife.

The driving incident occurred 10 days later, on July 17, 2017. The jury heard both the neighbor's and Hupp's version of the story and saw the footage recorded on the neighbor's security camera, which we have also watched. The footage shows the neighbor's front yard from the vantage point of the house, looking onto the street. As is common in gated communities and tract developments, the street has no sidewalk area, just rounded curbing that slopes into the asphalt. In the video, the neighbor appears to be sweeping his curb when Hupp's car appears on the left side of the screen. Hupp is driving close to the curb, and he stays his course as

he drives past the neighbor, very nearly hitting him. The neighbor spins around and looks surprised as Hupp drives off.

The neighbor told the jury the incident had scared him. He said he felt a rush of air then noticed Hupp's car "very, very close" to him and had to jump out of the way to avoid being hit. He estimated the passenger side mirror of Hupp's car came within an inch or two of the right side of his body. Hupp continued to drive on; he didn't make any effort to apologize or check on him.

Hupp told the jury he had not meant to hit or scare the neighbor. He admitted he had seen the neighbor by the curb when he pulled out of his driveway, but said he didn't notice he'd almost hit him because he was distracted by his rambunctious dog in the backseat and another car that was approaching a nearby intersection.

The jury found Hupp guilty of both misdemeanor assault with a deadly weapon and misdemeanor violating a restraining order, and the trial court found the probation violation allegation true by a preponderance of the evidence. The court said it found the neighbor a credible witness and disbelieved Hupp's testimony that he didn't mean to drive so close to him. It found that Hupp did not intend to hit the neighbor with his car but did intend to intimidate or scare him. It also found Hupp should reasonably have known that his driving so close to the neighbor would directly and probably result in the application of force, making his act an assault with a deadly weapon. The court also found Hupp had violated the restraining order because his act of "driving so close to [the neighbor] with a several-thousand-pound automobile constituted physical abuse, intimidation, a threat, an assault, harassment, and disturbing the peace of [the neighbor]." Finally, based on its finding that Hupp had "committed two violations of California law," the trial court found Hupp had violated the term of his probation requiring him to obey "all laws."

At Hupp's sentencing hearing, the court made clear that the restraining order violation, not just the assault with a deadly weapon, constituted a probation violation because "[u]sing an automobile to scare, harass, or frighten somebody is not acceptable."

Lodg. 6 at 2–6.

///

///

1  |  **IV.**

2  |  **PETITIONER'S CLAIMS FOR RELIEF**

3  The Petition appears to present a single claim for ineffective assistance of

4  counsel.  Dkt. 6 at 5.  Respondent contends that Petitioner's claim is procedurally

5  defaulted, and that Petitioner's claim is meritless.  Dkt. 22-1 at 8–9.

6  |  **V.**

7  |  **DISCUSSION**

8  **A.  PETITIONER'S CLAIMS APPEAR PROCEDURALLY BARRED**

9  |  **1.  Applicable law**

10  A state prisoner must exhaust his or her state court remedies before a federal

11  court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1)(A);

12  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  To satisfy the exhaustion

13  requirement, a petitioner must fairly present his or her federal claims in the state

14  courts to give the state the opportunity to pass upon and correct alleged violations of

15  the petitioner's federal rights.  Duncan v. Henry, 513 U.S. 364, 365 (1995) (per

16  curiam).  For a petitioner in California custody, this generally means the petitioner

17  must have fairly presented his or her claims in a petition to the California Supreme

18  Court.  See O'Sullivan, 526 U.S. at 845 (interpreting 28 U.S.C. § 2254(c)); Gatlin v.

19  Madding, 189 F.3d 882, 888 (9th Cir. 1999) (applying O'Sullivan to California).

20  A claim that was not "properly exhausted," however, may be "technically

21  exhausted" if the claim is procedurally defaulted.  Coleman v. Thompson, 501 U.S.

22  722, 732 (1991) (A petitioner who has "defaulted his federal claims in state court

23  meets the technical requirements for exhaustion; there are no state remedies any

24  longer 'available' to him."); see also Smith v. Baldwin, 510 F.3d 1127, 1138 (9th Cir.

25  2007).  "If the petitioner fails to present his federal claims to the state's highest court,

26  and if he is procedurally barred from presenting those claims to the appropriate state

27  court at the time of filing his federal habeas petition, the petitioner's claims are

28  |

1   considered procedurally defaulted for purposes of federal habeas review." Smith, 510

2   F.3d at 1138 (citing O'Sullivan, 526 U.S. at 848).

3        Furthermore, even a "properly exhausted" claim may be procedurally barred if

4   the claim was rejected by the state court on an independent and adequate state law

5   ground. Walker v. Martin, 562 U.S. 307, 315 (2011); Cooper v. Neven, 641 F.3d 322,

6   327 (9th Cir. 2011). "The adequate and independent state ground doctrine furthers

7   [the objectives of the exhaustion requirement], for without it, 'habeas petitioners

8   would be able to avoid the exhaustion requirement by defaulting their federal claims

9   in state court.'" Walker, 562 U.S. at 315 (citing Coleman, 501 U.S. at 732). In order

10  for a claim to be procedurally barred for federal habeas corpus purposes, the state

11  court opinion "must clearly and expressly" state that its judgment rests on a state

12  procedural bar. Harris v. Reed, 489 U.S. 255, 263 (1989). Furthermore, the

13  procedural bar must be adequate, i.e., "firmly established and regularly followed."

14  Walker, 562 U.S. at 316.

15      **2.    Analysis**

16      Here, it is not entirely clear whether Petitioner is challenging the misdemeanor

17  convictions in Case No. BAM1702375, the probation violation in Case No.

18  RIF1311088, or both. Indeed, both proceedings were conducted simultaneously, and

19  therefore any ineffective assistance of trial counsel claim would apply equally to both.

20  Out of an abundance of caution, the Court analyzes Petitioner's claim as if it attacks

21  both the misdemeanor convictions and the probation violation.

22      **a.    Misdemeanor convictions in Case No. BAM1702375**

23      As noted above, Petitioner filed a habeas petition in the California Supreme

24  Court challenging his misdemeanor convictions in Case No. BAM1702375. Lodg. 7.

25  The petition appeared to contain a single ineffective assistance of counsel ("IAC")

26  claim. Id. at 3–4. On March 9, 2022, the California Supreme Court summarily denied

27  the habeas petition with the following citation:

28

7

(See People v. Villa (2009) 45 Cal.4th 1063, 1066 [habeas corpus relief is unavailable where the petitioner is not in the custody of California authorities as a result of the challenged conviction]; **In re Robbins (1998) 18 Cal.4th 770, 780 [courts will not entertain habeas corpus claims that are untimely]**; People v. Duvall (1995) 9 Cal.4th 464, 474 [a petition for writ of habeas corpus must include copies of reasonably available documentary evidence]; In re Swain (1949) 34 Cal.2d 300, 304 [a petition for writ of habeas corpus must allege sufficient facts with particularity].). Lodgs. 7–8 (emphasis added).

Because the petition included only one claim, there is no confusion about which bars applied to which claims—all bars must apply to Petitioner's single IAC claim.  Cf. Valerio v. Crawford, 306 F.3d 742, 773–74 (9th Cir. 2002) (no bar where state court ruling did not specify which claims were barred for what reason), cert. denied, 538 U.S. 994 (2003).  The Supreme Court has held that California's timeliness bar, as established in Robbins, is an adequate and independent basis to preclude federal habeas review.  Walker, 562 U.S. at 317.  Accordingly, the California Supreme Court's citation to Robbins constitutes a denial on an independent and adequate state law ground that bars federal review of Petitioner's IAC claim with respect to Case No. BAM1702375.[4]

### b.   Probation violation in Case No. RIF1311088

Petitioner has apparently not submitted his IAC claim with respect to Case No. RIF1311088 to the California Supreme Court.  See Search Results - Supreme Court, Search by Case Party (Hupp, Paul), California Appellate Courts Case Information, https://appellatecases.courtinfo.ca.gov/search/searchResults.cfm?dist=0&search=party (last visited July 19, 2022).  Accordingly, Petitioner has not exhausted his IAC claim with respect to the probation violation in Case No. RIF1311088.

However, as noted above, the California Supreme Court rejected Petitioner's IAC claim with respect to misdemeanor convictions in Case No. BAM1702375 as

---

[4] Because the Supreme Court has clearly held California's timeliness bar as established in Robbins is an independent and adequate state law ground, and the California Supreme Court clearly indicated Petitioner's IAC claim was untimely, Petitioner's claim is clearly procedurally barred on that ground alone; the Court need not determine whether the California Supreme Court's other citations are independent and adequate state law grounds.

1   untimely.  Lodg. 8.  Petitioner's IAC claim with respect to his probation violation in

2   Case No. RIF1311088 is substantively identical because the misdemeanor trial before

3   the jury and the probation violation proceedings before the trial court occurred

4   simultaneously.  Therefore, Petitioner's IAC claim with respect to Case No.

5   RIF1311088 would almost surely be similarly rejected as untimely.  Thus, Petitioner

6   has no state remedies available to him and his claim is procedurally defaulted.

7   **B.     PETITIONER HAS NOT DEMONSTRATED CAUSE AND**

8   **PREJUDICE BECAUSE HIS CLAIM IS MERITLESS**

9   **1.     Applicable law**

10      To overcome a procedural bar, a Petitioner must show: 1) "cause and

11   prejudice"; or (2) a fundamental miscarriage of justice, i.e., factual innocence.  Cooper,

12   641 F.3d at 327.  In Martinez v. Ryan, the Supreme Court identified held that

13   ineffective assistance of counsel, or the absence of counsel, on collateral review may

14   constitute cause to excuse a procedural default for claims of ineffective assistance of

15   trial counsel.  566 U.S. 1, 9–15 (2012).  To overcome a procedural default in this

16   situation, a prisoner must show: "(1) the underlying ineffective assistance of trial

17   counsel claim is 'substantial'; (2) the petitioner was not represented or had ineffective

18   counsel during the [state habeas proceeding]; (3) [the state habeas] proceeding was the

19   initial review proceeding; and (4) state law required (or forced as a practical matter)

20   the petitioner to bring the claim in the [state habeas proceeding]."  Dickens v. Ryan,

21   740 F.3d 1302, 1319 (9th Cir. 2014) (en banc).

22      A "substantial" claim is one that "has some merit" and there is a reasonable

23   probability that the result of a proceeding would have been different but for counsel's

24   deficient performance.  Martinez, 566 U.S. at 14; Rodney v. Filson, 916 F.3d 1254,

25   1260 (9th Cir. 2019). A prisoner "who was not represented by post-conviction

26   counsel in his initial-review collateral proceeding is not required to make any

27   additional showing of prejudice over and above the requirement of showing a

28

9

1   substantial trial-level IAC claim." Rodney, 916 F.3d at 1260 (emphasis in original)

2   (citing Detrich v. Ryan, 740 F.3d 1237, 1245 (9th Cir. 2013) (en banc)).

3          A cursory, vague, or unsupported claim of ineffective assistance is not

4   "substantial" under the Martinez procedural default analysis. See Carter v. Ryan, No.

5   CV-17-04105-PHX-DGC (MHB), 2019 WL 4855212 (D. Ariz. Aug. 22, 2019), report

6   and recommendation adopted, No. CV-17-4105-PHX-DGC (MHB), 2019 WL

7   4849545 (D. Ariz. Oct. 1, 2019) ("Petitioner has failed to establish a 'substantial' claim

8   of ineffective assistance of counsel. Such vague, conclusory, and nonsensical

9   statements [do] not overcome the procedural bar.").

10         **2.    Analysis**

11         Petitioner argues he is "factually innocent" of his misdemeanor convictions for

12  assault with a deadly weapon and violating a court order.  Dkt. 29 at 1.  Specifically,

13  Petitioner argues he could not be guilty of assaulting his neighbor with his car because

14  the trial court found he did not actually "intend" to hit the neighbor. Id. at 1–2.

15  Furthermore, Petitioner notes he was obeying all traffic laws, and the neighbor was

16  standing in the street. Id.  Petitioner argues that trial counsel was ineffective for

17  failing to raise all these points. Id.

18         Admittedly, the trial court's finding on the probation violation is confusing.

19  The trial court explicitly concluded that Petitioner did not intend to run his neighbor

20  over or hit him with his car, but rather intended "to scare him, intimidate him,

21  perhaps get even, [or] disturb his peace."  Lodg. 2, Vol. I at 17.  This appears to

22  conflict with the trial court's finding that Petitioner was had committed assault with

23  his car, specifically, that Petitioner:

24         was aware of[ ]facts that would lead a reasonable person to realize that
           his act by its nature would directly and probably result in the application
25         of force to someone and when [Petitioner] acted, he had the present ability
           to apply force with a deadly weapon other than a firearm to a person.
26

27  Id. at 16.

28

                                        10

1    As noted above, though the trial on the misdemeanor charges and the

2    proceedings on the probation violation occurred simultaneously, the jury's findings

3    and the trial court's findings were made separately.  See id. at 10-15.  Accordingly, the

4    trial court's finding that Petitioner did not intend to hit his neighbor with the car is

5    independent of, and does not affect, the jury's verdict that Petitioner committed

6    assault with his car.  Therefore, the Court must again analyze Petitioner's claim

7    separately with respect to the misdemeanor convictions and probation violation

8    proceedings.  Ultimately, the trial court's seemingly contradictory finding does not

9    show Petitioner is factually innocent of either the probation violation or the

10   misdemeanor convictions.

11   With respect to the probation violation, even if Petitioner is correct that the

12   trial court's finding that Petitioner did not intend to hit his neighbor conflicts with

13   trial court's conclusion that Petitioner committed assault, the assault conviction was

14   only one of two independent bases for the probation violation.  The trial court also

15   found that Petitioner violated the court's protective order because his actions

16   "constituted an abuse, intimidation, threat, harassment, or — and/or disturbing the

17   peace" of his neighbor.  Id. at 16.  The trial court made clear that the probation

18   violation was independently based on Petitioner's violation of a court order, in

19   addition to the assault.  Id. at 15–16.  The trial court also made clear that this finding

20   was unaffected by the issue of whether Petitioner intended to hit his neighbor with his

21   car.  Id. at 17.  Thus, as the Court of Appeal found, regardless of whether Petitioner

22   intended to hit his neighbor, or whether the trial court's conclusion that Petitioner

23   committed assault was erroneous, the probation violation could have been sustained

24   based only on Petitioner's violation of the trial court's protective order, which did not

25   require a finding of intent.  Thus, Petitioner has not shown he is "factually innocent"

26   of the conduct founding the basis for his probation violation.

27   With respect to the misdemeanor convictions, Petitioner does not present any

28   new evidence that was not presented to the jury at trial.  The jury heard testimony

1    from both Petitioner and his neighbor, watched video of the incident, and concluded

2    Petitioner committed an assault.  In the absence of any new evidence, Petitioner has

3    simply not shown by clear and convincing evidence that no reasonable factfinder

4    could have found him guilty of assault with a deadly weapon.  See Dretke v. Haley,

5    541 U.S. 386, 393 (2004).  Rather, Petitioner asks this Court to relitigate the jury's

6    credibility determination, which it is not in a place to do.  See Marshall v. Lonberger,

7    459 U.S. 422, 434 (1983) (noting a federal habeas court has "no license" to

8    redetermine credibility of witnesses); see also Bruce v. Terhune, 376 F.3d 950, 957-58

9    (9th Cir. 2004) ("A jury's credibility determinations are [ ] entitled to near-total

10   deference" on federal habeas review.).

11          For similar reasons that his "factual innocence" argument fails, Petitioner has

12   not shown cause and prejudice to excuse his procedural default via the pathway set

13   out in Martinez.  Petitioner's IAC claim is meritless because, even assuming trial

14   counsel was somehow deficient, Petitioner has not shown there exists a reasonable

15   probability that the result of a proceeding would have been different but for counsel's

16   deficient performance—i.e., that he was prejudiced.  With respect to the probation

17   violation, as discussed above, the trial court's finding that Petitioner violated his

18   probation rested on a basis wholly independent from the issue of whether Petitioner

19   intended to hit his neighbor with his car.  Thus, even if counsel could have

20   successfully argued Petitioner could not be found guilty of assault because he did not

21   intend to hit his neighbor or because he was not in violation of any traffic laws,

22   Petitioner would not have been prejudiced by trial counsel's failure to argue this

23   point—he would have still been in violation of his probation because the trial court

24   found that Petitioner intended to scare or intimidate his neighbor in violation of the

25   court's protective order.

26          With respect to the misdemeanor convictions, as noted above, Petitioner

27   presents no evidence that was not presented at trial.  Additionally, Petitioner cites no

28   authority showing that a driver obeying all traffic laws cannot be guilty of assaulting

1   an individual with a car if the individual is standing in the street.  The jury had access
2   to video of the incident, and therefore witnessed Petitioner's driving and the
3   neighbor's position in the street.  Still, after hearing from both Petitioner and his
4   neighbor, the jury concluded that Petitioner committed an assault with his car.  Given
5   that the jury saw the video and heard from both involved parties, it is unclear how
6   Petitioner was prejudiced by any alleged failure by trial counsel to note that Petitioner
7   was complying with traffic laws and that the neighbor was in the street.

8        Indeed, with respect to deficient performance, Petitioner does not explain what
9   trial counsel did or failed to do; he only offers the brief, conclusory statement that
10  counsel "failed to raise these points" at trial or appeal.  Dkts. 6 at 5; 29 at 2–3; Lodg. 7
11  at 4.  This is incorrect.  At closing argument, trial counsel replayed the video, noting
12  Petitioner's driving and the neighbor's position in the street, and argued Petitioner did
13  not intend to hit the neighbor and thus could not be guilty of assault.  Lodg. 2, Vol.
14  III at 201–05.  Furthermore, Petitioner's appellate counsel raised many similar
15  arguments in Petitioner's Opening Brief, including that Petitioner could not be guilty
16  of assault where he did not intend to hit the neighbor.  Lodg. 3 at 10–15.  In fact,
17  Petitioner's IAC claim appears to be a veiled repackaging of his sufficiency of the
18  evidence claim, which was presented to rejected by the California Court of Appeal.
19  See Lodg. 6.

20       Ultimately, Petitioner has failed to explain how counsel was deficient, and the
21  Court cannot discern how any potential deficient performance resulted in prejudice to
22  Petitioner.  Petitioner's IAC claim is therefore meritless, and Petitioner cannot
23  overcome the procedural default.  See, e.g., Carter, 2019 WL 4855212 at *8 (finding
24  IAC claim was not substantial where it was vague and conclusory).

25                                    **VI.**
26                    **CERTIFICATE OF APPEALABILITY**

27       Under 28 U.S.C. § 2253(c)(2), a Certificate of Appealability may issue "if the
28  applicant has made a substantial showing of the denial of a constitutional right."  The

Supreme Court has held that, when the court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, this standard means that the petitioner must show both that: (1) "jurists of reason would find it debatable whether the district court was correct in its procedural ruling" and (2) "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right." Slack v. McDaniel, 529 U.S. 473, 483–84 (2000). In this case, petitioners have not had an opportunity to develop their claims or argue their merits in the court, and therefore, with respect to the second part of the test, the Ninth Circuit "simply take[s] a 'quick look' at the face of the complaint to determine whether the petition has 'facially allege[d] the denial of a constitutional right.' " Valerio v. Crawford, 306 F.3d 742, 767 (9th Cir. 2002) (quoting Petrocelli v. Angelone, 248 F.3d 877, 885 (9th Cir. 2001)).

The undersigned finds that reasonable jurists could not debate the Court's procedural ruling that Petitioner's claims are procedurally defaulted.  Thus, it is recommended that a Certificate of Appealability be **DENIED**.

## VII.

## RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that the Court issue an Order:

(1) accepting this Report and Recommendation;

(2) **DENYING** the Petition;

(3) **DISMISSING** this action with prejudice; and

(4) **DENYING** a Certificate of Appealability.


Dated:  July 25, 2022

/s/
_____
HONORABLE MARGO A. ROCCONI
United States Magistrate Judge

14